JMM:RPD
F#:2009R01293

SEP 3 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**09-0885M**

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

BARRY STERN,

          Defendant.

- - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(18 U.S.C. §§ 668(b)(1)
and 1001(a)(2))

EASTERN DISTRICT OF NEW YORK, SS:

     JAMES P. WYNNE being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

     Upon information and belief, between on or about July 1, 2008 and August 1, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BARRY STERN did knowingly and intentionally steal from a museum, to wit: the Hillwood Art Museum of Long Island University, objects of cultural heritage, to wit: nine ancient Egyptian artifacts.

     (Title 18, United States Code, Section 668(b)(1)).

     Upon information and belief, on or about July 6, 2009, within the Eastern District of New York, the defendant BARRY STERN did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a

matter within the jurisdiction of the Executive Branch of the Government of the United States, to wit: the FBI, in that the defendant stated that he did not steal ancient Egyptian artifacts from the Hillwood Art Museum of Long Island University when, in fact, as the defendant then and there well knew and believed, he had stolen such artifacts from the museum.

(Title 18, United States Code, Section 1001(a)).

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.   I have been a Special Agent with the FBI for approximately 25 years.  During that time, I have participated in hundreds of criminal investigations.  Since January 1987, I have been assigned to the Major Theft Squad in the FBI's New York Office.  In connection with that assignment, I have specialized in investigations concerning art theft and art fraud, and have participated in other investigations concerning financial crimes, including mail fraud, wire fraud and money laundering.  The information contained in this affidavit is based upon first-hand knowledge, my discussions with witnesses involved in the investigation, my interview of the defendant, and a review of documents, including financial records and museum records, as well as all the evidence related to this investigation.

---

[1]   Because the purpose of this affidavit is to establish only probable cause to arrest, I have not set forth a description of all the facts and circumstances of which I am aware.

## The Hillwood Art Museum, Long Island University

2.   The Hillwood Art Museum (the "Museum") is a component of Long Island University ("LIU").  Although LIU has several campuses throughout the Eastern District of New York, the Museum is situated on the LIU C.W. Post Campus, located in Brookville, New York.  The Museum is a permanent institution with a professional staff and was established principally for education purposes.  The Museum owns, utilizes and cares for tangible objects that are exhibited to the public on a regular basis and the activities of the Museum affect interstate and foreign commerce.  The Museum is in possession of thousands of artifacts and display pieces, some of which were donated to the Museum by various benefactors.  The Museum maintains a database that lists their collections and provides photographs, descriptions and other information relating to items maintained in the Museum's collections.

## The Benefactor Collection

3.   In 2002, a benefactor donated approximately 50 objects (the "Benefactor Collection") to the Museum in memory of her late husband.  Included in those donated objects were several Egyptian antiquities.

## The Defendant

4.   From approximately 1986 until August 2008, the defendant BARRY STERN was employed by LIU in various capacities,

including as an art teacher.  The defendant's final position at LIU was Director of the Museum.  On August 1, 2008, the defendant's annual contract with LIU  was not renewed and, thus, he was no longer employed by LIU.  Prior to the termination of the contract, the defendant had been informed that his contract would not be renewed.

## The Investigation

5.   On June 12, 2009, personnel in the Antiquities Department of Christie's Auction House ("Christie's") faxed an "after sale" purchase offer to the defendant BARRY STERN at his former office in the Museum.  An "after sale" offer is an offer to purchase a piece that was put up for auction but did not sell at the auction.  The purchase offer faxed to the defendant indicated that a purchaser was offering to buy an Egyptian antiquity (the Faience Shabti depicted in Figure 13 in the attachment) that the defendant had placed at Christie's for sale. Upon receipt of the facsimile, Museum personnel contacted Christie's and learned that the Egyptian antiquity that was the subject of the purchase offer was part of an antiquities auction that Christie's conducted on June 3, 2009.

6.   Thereafter, Museum personnel obtained the Christie's catalogue for the June 3, 2009 auction.  Examination of that catalogue revealed that the Egyptian antiquity that was the subject of the faxed purchase offer appeared to be a piece

that had been donated to the Museum as part of the Benefactor Collection.   Furthermore, several other pieces described in the Christie's catalogue as being "From The Collection of Barry Stern" appeared to be Egyptian antiquities that had been donated to the Museum as part of the Benefactor Collection.

7.   Thereafter, I interviewed Christie's personnel and reviewed various business records.   Through those efforts, I learned that, on or about August 25, 2008 and September 11, 2008, the defendant BARRY STERN delivered nine Egyptian antiquities to Christie's for inspection.   Those artifacts were as follows:

> (1)   Bronze Apis Bull (Figure 1 in attachment);
>
> (2)   Bronze Ptah (Figures 3, 18 - 21 in attachment);
>
> (3)   Bronze Osiris (Figure 5 in attachment);
>
> (4)   Limestone Shabti (Figure 7 in attachment);
>
> (5)   Limestone Head (Figure 9 in attachment); and
>
> (6)   Wood Ptah (Figure 11 in attachment);
>
> (7)   Faience Shabti (Figure 13 in attachment);
>
> (8)   Faience Shabti (Figure 15 in attachment); and
>
> (9)   Bronze Imhotep (Figure 17 in attachment).

Photographs of each of those pieces, taken by Christie's, are attached to this affidavit as indicated above.   The defendant told Christie's personnel that his parents had acquired the artifacts in 1955, and that he had obtained them from his parents.   According to Christie's documents, on or about

September 21, 2008, the defendant BARRY STERN signed a consignment agreement with Christie's with himself as consignor of the nine Egyptian artifacts, and with Christie's as seller, for a Christie's Antiquities auction scheduled for December 9, 2008.

8. According to records obtained from Christie's, five of the antiquities listed above sold at the December 9, 2008 auction for a total price of $35,300. The five pieces sold for $10,000, $8,500, $7,500, $6,500 and $2,800, respectively. In January 2009, Christie's issued checks to the defendant totaling $26,869, which represented the sale price less the Christie's commission. Pursuant to conversations with Christie's personnel, the defendant arranged for the remaining four antiquities to be included in the Christie's Antiquities auction scheduled for June 3, 2009.

9. According to records obtained from Christie's, three of the remaining four antiquities sold at the June 3, 2009 auction for a total price of $16,200. The three pieces sold for $7,000, $5,000 and $4,200, respectively. Christie's has not yet issued checks to the defendant BARRY STERN for those pieces. The fourth piece (the Faience Shabti depicted in Figure 13 in the attachment) was the antiquity that was the subject of the June 12, 2009 faxed purchase offer mentioned above.

10.   A review of the Museum's collection has revealed that at least nine antiquities are missing from the Benefactor Collection.   As indicated below, each of those pieces is more than 2,000 years old.   They are described in the Museum database as:

(1)   Bronze Apis Bull (B.C.E. 712 - 332; Bronze Apis Bull, traces of incised blanket, wings on shoulders and hind-quarters, solar disc, right horn and uraeus broken) (Figure 2 in attachment);

(2)   Bronze Ptah (B.C.E. 664 - 525; Standing bronze Ptah statue with traces of gold inlay on eyes. Inscription on base:"PTAH, GIVER OF LIFE") (Figure 4 in attachment);

(3)   Bronze Osiris (B.C.E. 712- 332; Bronze Osiris. incised pectoral with counterpoise) (Figure 6 in attachment);

(4)   Limestone Shabti (New Kingdom; Limestone Shabti, seven lines of horizontal hieroglyphs and inscription on bottom) (Figure 8 in attachment);

(5)   Limestone Head (B.C.E. 305 - 30; Limestone head, tripartite bag wig) (Figure 10 in attachment);

(6)   Wood Ptah (B.C.E. 712 - 332; Wooden standing Osiroid figure with beard) (Figure 12 in attachment).

(7)   Faience Shabti (B.C.E. 1070- 712; Blue Faience Shabti with black hieroglyphic inscription "The Osiris," seed pack on back) (Figure 14 in attachment);

(8)   Faience Shabti (B.C.E. 1070 - 712; Dark Faience Shabti with painted wig, seed pack on back) (Figure 16 in attachment); and

(9)   Bronze Imhotep (B.C.E. 712 - 332; Seated Bronze Imhotep with scroll on lap, inlayed eyes, trace of inscription on scroll, incised pectoral) (No photograph available).

Photographs of the first eight pieces taken by Museum personnel are attached to this affidavit as indicated above. I and Museum personnel have compared the descriptions and photographs of those pieces maintained in the Museum's database with the descriptions and photographs of the antiquities the defendant BARRY STERN consigned to Christie's and, based on those comparisons, I and they believe the items that the defendant put up for auction at Christie's are the same antiquities missing from the Museum's collection.[2]  Furthermore, according to Museum personnel and records, item #2, the Bronze Ptah, sustained slight but distinctive damage to the head of the figure after it was obtained by the Museum.  Several small pieces of the bronze figure chipped off when the damage was sustained and the Museum still has those chips.  Photographs of the matching figure the defendant delivered to Christie's (Figures 3 and 18 - 21 in the attachment) clearly show the chips missing from the figure's head.  Similarly, item #1, the Bronze Apis Bull is distinct because of damage to the figure's horn and item #8, the Faience Shabti, has unique irregularities.

11.  A review of the Museum's current database and a comparison to previous versions of that database has revealed

---

[2] As indicated above, the Museum does not have a photograph of item #9, the Bronze Imhotep.  However, the description of that piece contained in the Museum's database accurately described the Bronze Imhotep consigned to Christie's by the defendant.

that the nine Benefactor Collection antiquities discussed above were deleted from the Museum's collections list on July 1, 2008 and/or July 2, 2008.[3/]   According to Museum personnel, as Director of the Museum, the defendant BARRY STERN was one of the few individuals who had the ability to access and modify database entries on those dates.

12.   On July 6, 2009, I interviewed the defendant BARRY STERN at his residence in Oyster Bay, New York.   Prior to the interview, I informed the defendant that I am an FBI Special Agent and that I wanted to discuss his consignment of certain Egyptian antiquities to Christie's.   The defendant reported that he began working at LIU in approximately 1986 and that he had served as the Director of the Museum until August 2008, at which time LIU refused to renew his contract.   The defendant further reported that he had helped obtain the Benefactor Collection for the Museum.   The defendant stated, among other things, that he obtained the Egyptian pieces he consigned to Christie's from his parents, who had obtained the items in the mid-1950's.   After reviewing photographs and other documents from the Museum and Christie's, the defendant repeatedly denied taking any of the Egyptian antiquities from the Museum's collection and consigning them to Christie's.   When I told the defendant that it would be

---

[3/] The descriptions and photographs of the missing pieces referenced in this affidavit were obtained from an archived version of the Museum's database.

an incredible coincidence if the pieces missing from the Museum's
collection appeared to be virtually identical to the antiquities
he obtained from his parents, he agreed.  During the interview,
the defendant repeatedly asked if any other items were missing
from the Museum's collection.  Following the interview, the
Museum determined that other pieces are, in fact, missing from
the Benefactor Collection.  The Museum is in the process of
reviewing its entire collection, consisting of thousands of
pieces, to determine exactly what items are missing.

13.  On August 5, 2009, a defense attorney purporting
to represent the defendant spoke to Assistant United States
Attorney Richard P. Donoghue.  That attorney reported that the
defendant is now willing to acknowledge that he did take the nine
pieces described above from the Museum and delivered them to
Christie's for sale.

WHEREFORE, your deponent respectfully requests that a warrant issue for the arrest of the defendant BARRY STERN so that he may be dealt with according to law.   Furthermore, your deponent respectfully requests that the warrant and this affidavit remain under seal until further order of the Court.

JAMES P. WYNNE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
3rd  day of September, 2009

E. THOMAS BOYLE, M.J.

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

The warrant and this affidavit will remain under seal until further order of the Court.

/S/ E. Thomas Boyle
USMJ

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK



**Figure 1** Apis Bull Christie's consigned to Christie's by Barry Stern



**Figure 2** Apis Bull missing from the Hillwood Museum





**Figure 3** Bronze Ptah consigned to Christie's by Barry Stern

**Figure 4** Bronze Ptah missing from the Hillwood Museum





**Figure 5** Bronze Osiris consigned to
Christie's by Barry Stern

**Figure 6** Bronze Osiris missing from
the Hillwood Museum



**Figure 7** Limestone Shabti consigned to Christie's by Barry Stern



**Figure 8** Limestone Shabti missing from the Hillwood Museum





**Figure 9** Limestone Head consigned to Christie's by Barry Stern

**Figure 10** Limestone Head missing from the Hillwood Museum



**Figure 11** Wood Ptah consigned to Christie's by Barry Stern



**Figure 12** Wood Ptah missing from the Hillwood Museum





**Figure 14** Faience Shabti missing from the Hillwood Museum

**Figure 13** Faience Shabti consigned to Christie's by Barry Stern



**Figure 15** Faience Shabti consigned to Christie's by Barry Stern



**Figure 16** Faience Shabti missing from the Hillwood Museum



**Figure 17** Bronze Imhotep consigned to Christie's by Barry Stern

No photograph available for
Bronze Imhotep missing from
the Hillwood Museum



**Figure 18** Bronze Ptah consigned to Christie's by Barry Stern: head damage



**Figure 19** Bronze Ptah consigned to Christie's by Barry Stern: head damage



**Figure 20** Bronze Ptah consigned to Christie's by Barry Stern: head damage

**Figure 21** Bronze Ptah consigned to Christie's by Barry Stern: head damage