

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. #2009R01293

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York 11722-4454*

October 13, 2010

The Honorable Denis R. Hurley
United States District Judge
Eastern District of New York
U.S. Courthouse and Federal Building
934 Federal Plaza
Central Islip, New York 11722

   Re:  United States v. Barry Stern
        Criminal Docket No. 09 CR 825 (DRH)

Dear Judge Hurley:

   The government writes to address the matters raised in the defendant's September 27, 2010 sentencing submission ("Def. Sub."). For the reasons set forth below, the government submits that the Probation Department's application of the two-point pecuniary gain enhancement is correct. Furthermore, the government submits that full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) should lead the Court to impose a sentence that includes incarceration.

I. The U.S.S.G. §2B1.5(b)(4) Pecuniary Gain Enhancement

   As detailed in the Presentence Investigation Report ("PSR"), the plea allocution, the Information, and the underlying Complaint (09-M885), the defendant Barry Stern stole nine ancient Egyptian artifacts from the Long Island University ("LIU") Hillwood Art Museum in July 2008, while he served as the Director of that museum. (PSR ¶¶ 1, 5, 6, 10). Also in July 2008, the defendant deleted the museum database entries relating to the nine artifacts, thereby erasing them from LIU's electronic inventory list. (Id. ¶ 7). In August and September of 2008, Stern delivered the nine pieces to Christie's Auction House ("Christie's") and entered into a consignment agreement so that Christie's could sell the artifacts on his behalf. (Id. ¶ 6). Stern falsely told Christie's personnel that he had obtained the artifacts from his parents. (Id. ¶ 5). Subsequently, Christie's sold eight of the nine pieces at two auctions and delivered sale proceeds to Stern. (Id. ¶ 6). Stern deposited the sale proceeds into his personal bank account, where he co-mingled the funds

with his personal money.[1]  When confronted by FBI agents on July 6, 2009, the defendant repeatedly lied, claiming that he never stole anything from the museum and that the artifacts he delivered to Christie's were, in fact, items he received from his parents. (Id. ¶ 8).

In calculating the defendant's advisory Sentencing Guidelines range, the Probation Department applied a two-point enhancement for pecuniary gain, pursuant to U.S.S.G. §2B1.5(b)(4).  (Id. ¶ 21).  Section 2B1.5(b)(4) indicates, in relevant part, that the two-point enhancement applies "[i]f the offense was committed for pecuniary gain."  Application Note 5 to §2B1.5 reads:

> For purposes of subsection (b)(4), "for pecuniary gain" means for receipt of, or in anticipation of receipt of, anything of value, whether monetary or in good and services. Therefore, offenses committed for pecuniary gain include both monetary and barter transactions, as well as activities designed to increase gross revenue.

In his September 27, 2010 submission, Defendant Stern repeatedly contends that he stole the artifacts solely to exact some measure of revenge for what he believed to be his mistreatment by LIU personnel. See e.g., Def. Sub. at 15 ("Barry Stern . . . was solely bent on acting vengefully.)  The defendant further contends that he "had always intended to return such monies to the University when he would be called upon to do so." Id. at 3.  In fact, the defense asserts that "it is undisputed that Mr. Stern never intended to spend a cent of that money, always anticipating the day when he would have to return all of it." Id. at 15.  Contrary to this claim, the defendant's actions, the chronology of events and common sense indicate that he stole the nine artifacts, at least in part, for pecuniary gain and that he never expected the theft to be discovered.  As such, the two-point §2B1.5(b)(4) pecuniary gain enhancement is clearly applicable.

---

[1] To the extent that the defense submission is intended to indicate that the defendant deposited the sales proceeds into a bank account that was used for no other purposes (see e.g., Def. Sub. at 3, "Mr. Stern immediately placed the monies, approximately $32,000, in a separate bank account from which he never thereafter withdrew a penny."), it is incorrect.

While there is a dearth of case law interpreting "pecuniary gain" for purposes of §2B1.5(b)(4), the plain language of the section, as supplemented by Application Note 5, makes it clear that the enhancement applies if the defendant anticipated receiving anything of value as a result of his commission of the offense. Here, that was clearly the case. The defense's emphasis on the second sentence of Application Note 5 simply does nothing to limit the meaning of "pecuniary gain" for purposes of §2B1.5(b)(4). As the second sentence itself makes clear, the enhancement is meant to "include both monetary and barter transactions, as well as activities designed to increase gross revenue," which is precisely what happened in this case. Similarly, the defense's attempt to recast and limit the plain meaning of "pecuniary gain" by reference to cases interpreting §2G2.2(b)(2), an enhancement applicable in child pornography cases, is unavailing. United States v. Lorge, 166 F.3d 516, 518-19 (2d Cir. 1999), cited by the defense, simply held that an enhancement for the distribution of child pornography under §2G2.2(b)(2) was applicable even in the absence of pecuniary gain. While the Ninth Circuit subsequently held otherwise based on the specific language found in §2G2.2(b)(2) -- language not found in §2B1.5(b)(4) -- this interpretation of a significantly different Guideline section by another Circuit Court simply does not limit the clear scope of §2B1.5(b)(4).

While it is entirely possible that Mr. Stern's theft may have been motivated, in part, by his desire to inflict some general harm on the museum, his actions and the lengths to which he went to profit from the crime reveal that, at a minimum, he anticipated receiving something of value as a result of his theft. Given his long involvement with the museum, his position as Director, and his extensive knowledge of art and antiquities, the defendant was well aware that the nine artifacts had significant value. Only ten days after his termination by LIU, the defendant delivered the artifacts to Christie's to arrange for their sale. Furthermore, his deletion of the artifacts from the museum's database made it nearly impossible for the theft to be discovered by LIU personnel. In fact, had Christie's personnel not inadvertently sent a facsimile regarding the sale of the last artifact to the defendant's old LIU contact number, it is unlikely this theft would have ever been discovered. After his initial meeting with Christie's personnel in August 2008, the defendant was repeatedly in contact with them to complete the consignment paperwork, ensure that the artifacts were presented in two auctions (December 2008, June 2009) and to collect the sale proceeds. Had the defendant's sole motivation been to harm LIU by depriving the Hillwood Art Museum of display pieces, he could have thrown the artifacts in the Long Island Sound or

packed them away in an attic. This he did not do. Instead, he took repeated and significant steps over a period of months to ensure that he profited financially from his theft. Furthermore, despite his current claim that he was simply holding the sale proceeds in an independent bank account in order to return the money to LIU, the defendant took no steps whatsoever to reveal the theft and, in fact, went to significant lengths to conceal it both by deleting the artifact database entries and by repeatedly lying to the FBI. Given all these facts, the government respectfully submits that the Probation Department is correct in concluding that the two-point pecuniary gain enhancement under §2B1.5(b)(4) applies.

II. The U.S.S.G. §5K2.20 Departure

Next, the defendant contends that a downward departure is warranted under §5K2.20 because his commission of this crime constituted aberrant behavior. (Def. Sub. 15-19). The defendant's argument on this point is clearly stronger than his pecuniary gain argument. However, as the defendant himself notes (id. at 16), §5K2.20(b) requires that, in order to qualify for an aberrant behavior downward departure, the defendant must have engaged in "a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; [and] (2) was of limited duration." Given the chronology here and the nature and duration of the efforts described above, it is doubtful that the defendant warrants a downward departure under the terms of §5K2.20. However, the government does acknowledge that, under 18 U.S.C. § 3553(a), the defendant's absence of any criminal history and his activities, as attested to by the exhibits attached to the defense sentencing submission, warrant very significant consideration.

III. The U.S.S.G. §5K2.20 Departure

Finally, the government submits that a full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) should lead the Court to impose a sentence that includes incarceration. While several of the § 3553(a) factors and subfactors -- such as the history and characteristics of the defendant and the need to protect the public from further crimes of the defendant -- weigh heavily in favor of this defendant, the sentence imposed here must also take into account the aggravating facts and circumstances.

The sentence imposed here, like the related Sentencing Guidelines calculation, should reflect the fact that this defendant grossly abused a significant position of trust. As the

Director of the Hillwood Art Museum, the defendant was given unparalleled access and control over the museum's inventory. That access and control was given to him to ensure that he could fulfill his responsibilities, responsibilities designed to benefit the museum, the larger LIU community and the general public. Instead of using that access and control to fulfill his responsibilities, he used it to commit and conceal theft in an effort to harm the University and make a personal profit. The sentence imposed here should deter others from similarly abusing such a position of trust. Additionally, the sentence in this case should recognize that the defendant stole uniquely valuable objects. While there may well be many Egyptian antiquities in private and public collections, and while the marketplace may be able to assign a financial value to such objects, the unique nature of these objects and their history do, in a very real sense, render them priceless. Furthermore, the sentence imposed here should reflect the months-long efforts expended by this defendant to commit, conceal and profit from this crime. Given all the facts and circumstances of this case, the government respectfully submits that a period of incarceration is warranted.

                Respectfully submitted,

                LORETTA E. LYNCH
                United States Attorney

By: *Richard P. Donoghue*
     Richard P. Donoghue
     Assistant U.S. Attorney
     (631) 715-7874
     (718) 254-6108

cc: Mark Baker, Esq.